Albert **RUBERTO** and **Kathleen Ruberto, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 1099, Docket 84–4188.**

United States Court of Appeals, Second Circuit.

Argued April 29, 1985.

Decided Oct. 2, 1985.

Albert M. Ruberto, pro se., petitioner-appellant.

Robert S. Pomerance, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard W. Perkins, Steven I. Frahm, Attys., Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before VAN GRAAFEILAND and PRATT, Circuit Judges, and LASKER, United States District Judge for the Southern District of New York sitting by designation.

PER CURIAM:

Albert M. Ruberto and Kathleen Ruberto appeal from a decision of the United States Tax Court, James M. Gussis, *Judge,* confirming the Commissioner of Internal Revenue's determination that the Rubertos were liable for personal income tax deficiencies and additions for 1980 and 1981, and awarding damages to the United States because the Ruberto's court action contesting the commissioner's determination was frivolous and instituted primarily for delay. The deficiencies and additions resulted from the Internal Revenue Service's disallowance of deductions for contributions the Rubertos claim to have made to the Universal Life Church, Inc., in Modesto, California. We reverse and remand because appellants offered to provide the tax court with certain evidence that they claimed would substantiate part of their claimed contributions, but were denied a fair opportunity to present that evidence to the court.

In their 1980 personal income tax return the Rubertos reported a total income of $26,683 and claimed a deduction under 26 U.S.C. § 170 for contributions of $2,293 to the Universal Life Church. In their 1981 return they reported a total income of $29,606 and claimed a deduction for contributions to the Universal Life Church of $13,925. The commissioner notified the Rubertos on May 12, 1983 that these deductions for 1980 and 1981 were disallowed "due to lack of substantiation" and because "it has not been established that the amount allegedly paid was [a] gift or contribution * * * [and] it has not been established that the organization to which the alleged contributions were made was a qualified donee". As a result of the disallowance, the commissioner determined that the Rubertos were liable for deficiencies of $525 for 1980 taxes and $2,793 for 1981 taxes, plus additions of $26.25 and $139.65 under 26 U.S.C. § 6653(a)(1) for negligent disregard of rules and regulations, and for further additions under 26 U.S.C. § 6653(a)(2) for interest. The Rubertos petitioned the tax court in order to contest the commissioner's determination.

At the trial the Rubertos appeared *pro se.* The commissioner did not dispute the fact that the Universal Life Church was a qualified donee under § 170 of the Internal Revenue Code for the years in question, but he did argue that the Rubertos could supply no evidence that they actually made the alleged contributions to the Universal Life Church. In support of their claimed deductions, the Rubertos offered two receipts from the Universal Life Church stating that contributions in the claimed amounts had been made; photocopies of some cancelled checks drawn on the Rubertos' personal checking account and made out to the Universal Life Church; and copies of either bank statements or a bankbook—the record is not clear—indicating account withdrawals which Mr. Ruberto claimed were used to purchase the cashier's checks and money orders with which

he made a number of the contributions to the Universal Life Church.

The tax court rejected the receipts as inadmissible hearsay. Because the bank statements or bankbook did not indicate what use had been made of the withdrawals, and because the Rubertos had no copies of or receipts for any cashier's checks or money orders, the court did not accept the Rubertos' claim that the withdrawals had been used to make contributions to the Universal Life Church. Mr. Ruberto explained to the court that he did not keep his copies of the cashier's checks or money orders because he thought it was unnecessary, since the Universal Life Church sent him receipts for his contributions. Mr. Ruberto also argued that the court and the Internal Revenue Service ("IRS") should accept the receipts from the Universal Life Church because the IRS had accepted unnotarized receipts for other contributions the Rubertos made in the same tax years to the Holy Rosary Church on Staten Island, where the Rubertos lived, and to the Archdiocese of New York.

As for the photocopies of the personal checks, which Mr. Ruberto claimed amounted to approximately $1000, the tax court found them to be inadmissible because the original cancelled checks were available and had been subpoenaed by the government but not produced. Mr. Ruberto told the tax court that he did not bring the original checks because he did not have them immediately available. However, he maintained that he could produce the originals and repeatedly requested time to do so. He explained that he received the subpoena asking for the original checks on a Friday evening, and the hearing before the tax court was on the following Monday; the weekend did not give him enough time, he claimed, to obtain the originals, although he asserted he could produce them if given more time.

The tax court made its decision without continuing the hearing until a later date to give the Rubertos time to produce the original cancelled checks. The court's decision was based, therefore, only on the testimony given at the hearing, which the court found unconvincing. "On this record", the court concluded, "petitioner has completely failed to meet his burden of showing that he made any contributions to the Universal Life Church, Inc. of Modesto within the meaning of § 170." The court therefore upheld the commissioner's determination of tax deficiencies and additions, and also awarded damages to the United States under 26 U.S.C. § 6673 because the Rubertos' court action was frivolous.

 A taxpayer bears the burden of proving that he is entitled to a deduction for charitable contributions under § 170 of the Internal Revenue Code, *see Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), and admission of evidence in the tax court is governed by the Federal Rules of Evidence, *see* T.C. Rule 143(a). In the present case the tax court did not err in refusing to admit the Universal Life Church receipts. The large amounts—47 percent of appellants' total income in 1981—makes them suspect, and here it was not established that the receipts were admissible under an exception to the hearsay rule. The exception for records of personal and family history kept by religious organizations, Fed.R.Evid. 803(11), is clearly inapplicable to receipts of this kind. As for the business records exception, Fed. R.Evid. 803(6), nothing established that the letters were written at or near the time of the purported contributions, that they were made by or from information transmitted by a person with knowledge, or that it was the regular practice of the church to write such receipts and keep the records they purport to reflect. Without this foundation the receipts do not qualify under rule 803(6). *See Hall v. Commissioner*, 729 F.2d 632 (9th Cir.1984); *Rondinelli v. Commissioner*, 47 T.C.M. (CCH) 1379 (1984), *aff'd mem.*, 760 F.2d 253 (2d Cir. 1985).

Appellants argue that it was unfair for the commissioner to accept the receipts for contributions made to the Holy Rosary Church and to the Archdiocese of New York, and at the same time to reject the

receipts supplied by the Universal Life Church. The local church receipts, however, were for only $272 in 1980 and $266 in 1981, and these relatively small contributions are not inherently suspect in the way disproportionately larger contributions are. The IRS had the discretion to accept the local church receipts at face value, and their admissibility was not contested at the tax court hearing.

 The checks drawn on the Rubertos' personal account, however, are a different matter. If checks were made out to and endorsed by the Universal Life Church in Modesto, this would be evidence that at least some of the Rubertos' deductions might be valid. The tax court did not err in refusing to admit the photocopies of the cancelled checks, since problems in matching the copies of the backs of the checks with copies of the fronts made them somewhat suspect. Fed.R.Evid. 1003; *see United States v. Covello*, 410 F.2d 536, 543 (2d Cir.), *cert. denied*, 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969) ("The admissibility of secondary evidence is within the broad discretion of the trial judge."). It was an abuse of discretion, however, for the court to fail to give the Rubertos a reasonable opportunity to obtain and submit the original checks which they claimed they could produce. Denying the Rubertos this opportunity was not fair because the Rubertos had only a weekend's notice that the original checks were to be brought to the hearing.

The commissioner has not disputed the Rubertos' claim that they received the subpoena asking for the checks only on the Friday before the Monday hearing. Because the Rubertos were appearing pro se it is understandable that they thought photocopies of the checks would be sufficient. At the hearing Mr. Ruberto repeatedly offered to produce the originals, and it would have been only a minor inconvenience for the tax court to grant a short continuance to give the Rubertos time to get the originals of their cancelled checks.

We therefore reverse the tax court's decision and remand for further proceedings.

On remand the Rubertos shall be given a reasonable opportunity to produce the original cancelled checks drawn on their personal account, made payable to the Universal Life Church in Modesto, California. If the Rubertos can supply any additional evidence relevant to their claims, such as authenticated, admissible bank or church records of the alleged cashier's checks or money orders, it would also be appropriate for the tax court to consider that evidence at the time the cancelled checks are to be produced. In reversing and remanding, we do not pass upon either the merits of appellants' claimed deductions or the additions to tax and damages assessed against appellants.

Reversed and remanded.