ALBERT RUBERTO AND KATHLEEN RUBERTO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ruberto v. Commissioner
Docket No. 22752-83.
United States Tax Court
T.C. Memo 1987-623; 1987 Tax Ct. Memo LEXIS 668; 54 T.C.M. (CCH) 1388; T.C.M. (RIA) 87623; December 29, 1987; As amended December 30, 1987; As amended January 12, 1988 Albert Ruberto, pro se. Ellen Mechlin, for the respondent. GUSSIS
MEMORANDUM OPINION GUSSIS, Special Trial Judge: This case is before the Court on remand from the Court of Appeals for the Second Circuit. Ruberto v. Commissioner,774 F.2d 61 (2d Cir. 1985), reversing and remanding per *669 curiam T.C. Memo. 1984-557. The issues are whether petitioner are entitled to charitable contributions under section 170 in 1980 and 1981 for amounts purportedly paid to the Universal Life Church, Inc. of Modesto, California, whether petitioners are entitled to a theft loss deduction in 1980 under the provisions of section 165(c)(3), whether petitioners are liable for additions to tax in 1980 and 1981 under the provisions of section 6653(a), and whether damages should be awarded to the United States under the provisions of section 6673 under the circumstances of this case. [1]
After the receipt of the mandate of remand pursuant to Ruberto v. Commissioner,774 F.2d 61 (2d Cir. 1985), revg. and remanding per curiam T.C. Memo. 1984-550, a further trial was held. Pursuant to the mandate, testimony was heard and additional exhibits were admitted into the record. An exhibit submitted after trial has also been admitted into the record. Petitioners have the burden of proof to show that they are entitled to charitable *670 contributions under the provisions of section 170. Welch v. Helvering,290 U.S. 111 (1933). Petitioners claimed deductions under section 170 in 1980 and 1981 for purported payments to the Universal Life Church, Inc. in Modesto, California in the respective amounts of $ 2,293 and $ 13,925 which were disallowed by respondent. To support these deductions, petitioners have submitted the following checks payable to the order of the Universal Life Church drawn on their checking account at Gateway State Bank, Staten Island, New York: April 15, 1980
$   500
April 25, 1980
500
May 16, 1980
500
May 30, 1980
500
October 30, 1980
293
Total in 1980
$ 2,293
March 6, 1981
$   550
March 16, 1981
100
March 23, 1981
480
March 28, 1981
200
April 2, 1981
175
April 10, 1981
200
April 19, 1981
200
April 20, 1981
125
April 22, 1981
570
May 4, 1981
400
May 5, 1981
100
July 1, 1981
250
July 3, 1981
125
July 10, 1981
75
December 9, 1981
500
December 16, 1981
500
December 17, 1981
500
Total in 1981
$ 5,050
The amount of the deduction claimed in 1980 ($ 2,293) corresponds with the total of the *671 five checks issued in 1980 over the period from April 15 through October 30. However, the record also contains three receipts from the Universal Life Church, Inc., executed by Bishop Robert E. Imbeau, acknowledging the receipt from Albert Ruberto on January 3, 1980, January 10, 1980 and January 30, 1980 of payments in the respective amounts of $ 500, $ 1,000 and $ 793, or a total of $ 2,293. In other words, the purported payments by Mr. Ruberto were inexplicably acknowledged by the church long before the five 1980 checks were ever issued. Petitioner Albert Ruberto provided the Court with no plausible explanation for this unrealistic pattern of events. Similarly, the evidence shows that petitioner obtained his first receipt for the taxable year 1981 from the Universal Life Church, Inc. on February 2, 1981, more than a month before he purportedly issued his first check on March 6, 1981 to the church. Furthermore, the receipt is in the amount of $ 725 while the check is made out in the amount of $ 550. A comparison of the receipts issued to petitioner by the church throughout 1981 with the checks issued by petitioner in 1981 reveals a complete absence of any meaningful correlation *672 between the two sets of documents. [2] Against this background, the illusory nature of the purported payments to the Modesto Church is evident. We have also considered petitioner's financial resources in 1980 and 1981. Petitioner's tax returns for 1980 and 1981 show total income in the respective amounts of $ 26,683 and $ 29,606. Petitioner claimed six dependency exemptions in each of the years and also claimed various itemized Schedule A deductions representing expenditures (apart from the disputed charitable contributions) in significant amounts. It strains credibility to accept petitioner's contention that under these economic circumstances he was in a position to make payments *673 to the Modesto church in 1980 and 1981 in the sizeable amounts claimed by him. The timing of the purported payments by check in 1981 also supports an inference that such checks are spurious. For example, over a three or four day period (April 19-22, 1981) petitioner allegedly issued three checks to the Universal Life Church, Inc. in the total amount of $ 895 and a short time later he allegedly issued two checks a day apart (May 4-5, 1981) in the total amount of $ 500. Finally, an examination of petitioner's bank statements for 1981 reveals a continuing pattern of deposits in his checking account which would suggest that some part of the purported payments to the Universal Life Church, Inc. in all actuality [Text Deleted by Court Emendation] inured to petitioner's benefit. Such inurement, of course, is prohibited by the statute. Section 170(e)(2)(C); see generally Burwell v. Commissioner,89 T.C. 580 (1987); Svedahl v. Commissioner,89 T.C. 245 (1987); Wedvik v. Commissioner,87 T.C. 1458 (1986). [3]
*674 Petitioner also testified that he considered the payments to the Universal Life Church, Inc. to be in the nature of contributions to a building fund for the construction of a nursing home which would benefit petitioner and his family in future years. Such expectation, of course, would serve to disqualify petitioner's claims for a charitable deduction in their entirety under section 170. If a payment emanates primarily from the incentive of anticipated benefit, it does not qualify as a contribution within the intent of the statute. DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). Consequently, even if the payments were in fact made to Universal Life Church, Inc. in 1980 and 1981 such payments could not qualify for the deduction under section 170. On this record, we are unable to rely on the evidence presented by petitioner to establish that he did in fact make any payments to the Universal Life Church, Inc. in 1980 and 1981. This Court is not required to take into account evidence that is clouded with uncertainty or simply unbelievable. See Bose Corp. v. Consumers Union of United States, Inc.,466 U.S. 485, 512 (1984); *675 Woods v. United States,724 F.2d 1444, 1452 (9th Cir. 1984). Petitioner has failed to meet his burden of proof on this issue. Accordingly, we hold that petitioner is not entitled to a charitable contribution deduction under section 170 for the purported payments to the Universal Life Church, Inc. in 1980 and 1981. Petitioner claimed a theft loss deduction in the amount of $ 200 (after allowance for the statutory minimum of $ 100) in 1980 under the provisions of section 165(c)(3). Petitioner testified that while he was on vacation in Orlando, Florida with his family his hotel rooms were burglarized and that three one hundred dollar bills were taken. A police report confirms the incident. We conclude on this record that petitioner is entitled to a theft loss incurred in 1980 in the amount of $ 200. Respondent determined that petitioners were liable for the section 6653(a) and (a)(1) addition to tax in 1980 and 1981 and for the section 6653(a)(2) addition to tax in 1981. Petitioners have the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Section 6653(a) and (a)(1) imposes an addition to tax if any part *676 of the underpayment of tax is due to negligence or intentional disregard of rules and regulations. We have repeatedly sustained the addition to tax under this statutory provision in situations involving efforts similar to those that confront us here to create spurious deductions through purported charitable contributions to a "church." Davis v. Commissioner,81 T.C. 806 (1983), affd. by unpublished opinion 767 F.2d 931 (9th Cir. 1985). We find no believable evidence in this record to provide a credible explanation for petitioner's effort to claim as charitable deductions such significant portions of their available income in 1980 and 1981. We are satisfied on this record that the addition to tax under section 6653(a) for 1981 and 6653(a)(1) for 1981 is fully justified here. Respondent determined in addition to tax under sec. 6653(a)(2)in 1981 in the amount of 50 percent of the interest attributable to the underpayment of $ 2,793. We find, upon consideration of the entire record, that the portion of the underpayment attributable to the disallowance of the charitable deductions in 1980 and 1981 is due to negligence. To that extent, respondent's claim *677 for an addition to tax under section 6653(a)(2) in 1981 is sustained. The next issue is whether damages should be awarded to the United States under section 6673. Section 6673, as here applicable, provided that Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $ 5,000 shall be awarded to the United States by the Tax Court in its decision.
We have carefully considered the entire record and we find the position as to the purported charitable contributions to be frivolous and groundless and to have been instituted primarily for delay. The facts show that petitioners have no reasonable basis for success as to such purported charitable contributions. We are convinced that petitioner Albert Ruberto was fully aware of the meritless nature of his so-called "payments" to the Universal Life Church, Inc. The improvisatory nature of much of the testimony of petitioner reinforces this impression. He surely was aware that, given his economic circumstances, the alleged contributions *678 to the Modesto church were a fiction. This case is simply one more case in a long line of similar cases involving purported charitable contributions to the Universal Life Church, Inc. in Modesto. The deductions claimed in such cases have been uniformly disallowed. See Burwell v. Commissioner, supra.Under these circumstances we believe that the imposition of damages is justified. Cf. Rager v. Commissioner,775 F.2d 1081, 1083 (9th Cir. 1985), affg. a Memorandum Opinion of this Court. Accordingly, we award damages to the United States pursuant to section 6673 in the amount of $ 2,000. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. ↩
2. The following receipts were issued to petitioner in 1981 by the Universal Life Church, Inc.: February 2
$    725
April 29
500
May 8
500
May 15
700
May 16
1,300
May 23
80
June 1
100
June 10
1,000
July 1
300
July 10
350
July 17
70
July 27
800
August 1
250
August 15
200
December 20
6,000
December 30
800
TOTAL
$ 13,675
We have considered the 1980 and 1981 receipts simply to enable the Court to determine the bona fides of the checks in evidence. ↩
3. See also Universal Life Church, Inc. v. United States,    Cl. Ct.     (filed November 10, 1987), 87-2 USTC P9617↩, where the Court, in granting defendant's motion for summary judgment, effectively sustained the earlier revocation by the Internal Revenue Service of the tax-exempt status of the Universal Life Church, Inc.