**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**October 7, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

——————

No. 04-20836

——————

RAILROAD MANAGEMENT COMPANY LLC; ET AL,

Plaintiffs,

RAILROAD MANAGEMENT COMPANY LLC; STRONG CAPITAL I LP,

Plaintiffs - Appellants,

versus

CFS LOUISIANA MIDSTREAM CO,

Defendant - Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before REAVLEY, HIGGINBOTHAM, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Strong Capital I, L.P. and its agent, Railroad Management Co., L.L.C. (collectively "Strong"),

appeal the district court's order granting summary judgment for the defendant CFS  Louisiana

Midstream Co. ("CFS"). The issues on appeal are whether the district court abused its discretion in excluding evidence proffered by Strong that it had been assigned the right to collect payments from CFS pursuant to a licensing agreement, and whether the district court erred in holding as a matter of law that the parties had not entered into an implied contract.

I

In 1973, Enterprise Pipeline Company ("Enterprise") and Southern Pacific Transportation Company ("Southern Pacific") entered into a licensing agreement that permitted Enterprise to build a pipeline across Southern Pacific's land. In exchange, Enterprise agreed to pay an annual fee. Through a series of assignments, CFS became liable for making the annual payment and Union Pacific Railroad Company ("Union Pacific") became entitled to receipt of those payments. Strong contends that Union Pacific assigned its rights to it in 2001. Accordingly, Strong sent CFS bills requesting that either the annual payment be made or the pipeline removed. CFS failed to do either. Strong and its agent, Railroad Management, subsequently commenced this action, alleging a claim for breach of contract.

During the course of the litigation, CFS served a discovery request on Railroad Management for a copy of the assignment agreement between Union Pacific and Strong, and filed a motion for summary judgment on the grounds that there was no evidence that Union Pacific ever assigned its interests to Strong. Strong objected to the discovery request on the ground that the agreement contained proprietary information. Following a discovery conference, the district court ordered Railroad Management to produce the assignment agreement in a redacted form that eliminated the amount that Strong paid Union Pacific for the assignment and the names of other property owners affected by the transaction. Strong cross-moved for summary judgment.

2

Strong failed to submit a complete copy of the assignment agreement either in opposition to CFS's motion or in support of its own. Instead, it submitted: (1) affidavits of Howard L. Armistead III, Railroad Management's manager, and Greg Pinker, Union Pacific's director of commerce, stating that Union Pacific assigned its rights to Strong; (2) a four-page excerpt of the assignment agreement; and (3) what appeared to the district court to be a retyped version of the assignment agreement, omitting the proprietary information as provided for in the district court's discovery ruling. The district court held that none of this evidence was admissible to prove Strong's right to collect the licensing fees. After finding no evidence of an actual or implied contract between CFS and Strong, the district court granted summary judgment for CFS. Strong appealed.

II

Strong first contends that the district court abused its discretion in excluding the affidavits of Armistead and Pinker, submitted to prove the existence of an assignment agreement between Union Pacific and Strong, and Strong's rights thereunder. We review a district court's exclusion of evidence for an abuse of discretion. *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 551 (5th Cir. 2005). Resolution of preliminary factual questions concerning the admissibility of evidence are reviewed for clear error. *See Bourjaily v. United States*, 483 U.S. 171, 181 (1987) (holding that district court's determination that hearsay declarant was defendant's coconspirator for purposes of coconspirator exception to hearsay rule not clearly erroneous).

A

Pursuant to Federal Rule of Evidence 1002, the district court ruled that the Pinker and Armistead affidavits would be considered for the purpose of proving the existence of an agreement between Strong and Union Pacific, but not to prove the terms of that agreement, one of which was

the assignment of the proceeds of the lease to CFS. Strong contends that Pinker's and Armistead's affidavits were not submitted "to prove the content of" the assignment, but instead merely to prove that an assignment of the relevant rights occurred.

Federal Rule of Evidence 1002, commonly called the "best evidence rule", provides "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." But where the writing is not "closely related to a controlling issue," the Rules of Evidence deem the matter "collateral" and "other evidence of the contents of [the] writing" is admissible. FED. R. EVID. 1004(4).

Difficulty applying the rule commonly arises in situations such as this, where the party proffering the affidavit or testimony contends that it is not intended to "prove the content" of the document it discusses, but merely its "existence." The Rules do not define the difference, but in practice "[t]estimony about a document cannot go very far without referring to its terms." 4 WIGMORE ON EVIDENCE § 1242 (Chadbourne rev. 1972). The distinction requires careful consideration of the facts of each case to avoid descent into mere "logical subtlety and verbal quibbling." *Id.*; *see* MCCORMICK ON EVIDENCE § 233 (John W. Strong ed., 5th ed. 1999) (discussing difficulty); 31 WRIGHT & GOLD, FEDERAL PRACTICE AND PROCEDURE § 7184 (2000) (same). Although there are cases from this court differentiating between the content of a writing and the existence of the writing, they generally address the issue in a conclusory fashion and provide little guidance. *See, e.g., Dalton v. Fed. Deposit Ins. Corp.,* 987 F.2d 1216, 1223 (5th Cir. 1993) (in suit on defaulted promissory note, plaintiff need not produce documents that show precise payments made by the defendant and amounts owed in lieu of affidavit of bank officer); *United States v. Yamin*, 868

4

F.2d 130, 134 (5th Cir. 1989) (to prove that trademark on watch was counterfeit, prosecution need not produce actual watch even though "it may be argued that it is the content of [the writing on the watch] that must be proved"); *United States v. Carlock*, 806 F.2d 535, 551 (5th Cir. 1986) (testimony that union officials deviated from an "out-of-work list" used to assign jobs admissible in lieu of the actual list because the purpose of the testimony was not to prove contents of the list, but only to prove that it was not followed); *United States v. Levine*, 546 F.2d 658, 668 (5th Cir. 1977) (in obscenity prosecution, contents of pornographic film must be proved, and testimony concerning contents of that film not admissible in lieu of actual film), *abrogated on other grounds by, United States v. Lane*, 474 U.S. 438 (1986). The authorities from other jurisdictions appear to be in conflict.[1] In any event, because application of the best evidence rule generally depends on the "particular state of facts presented in each case and changing slightly in each instance, . . . rulings are generally of little profit as precedents." 4 WIGMORE, *supra* at § 1242; *see* 31 WRIGHT & GOLD, *supra* at 7184 ("Rule 1002 is deceptive in its apparent simplicity and . . . its application frequently requires a careful consideration of the facts in each case."); Comment, *The Best Evidence Rule*, 14 ARK. L.

---

[1] Compare, for example, *Goodson v. Brothers*, 20 So. 443 (Ala. 1896) (in action for ejectment, plaintiff may not testify that he purchased the land in lieu of the document purporting to convey the land), and *Curran v. Newport Association, Inc.*, 57 A.D.2d 882, 883 (N.Y. App. Div. 1977) ("On an issue as to whether a lease had been transferred or assigned, the written transfer or assignment is the best evidence."), with *Marriner v. Dennison,* 78 Cal. 202, 213 (Cal. 1889) (testimony of witness that he purchased land after a given date properly admitted over objection that contract for sale of land was the best evidence), and *United States Leasing Corp. v. Eerett, Creech, Hancock, and Herzig*, 363 S.E.2d 665, 667-68 (N.C. App. 1988) (in action on defaulted lease, plaintiff need not proffer assignment agreement by which it became entitled to lease payments). Or compare *Brintnall v. Professional Investors of Iowa, Inc.*, 218 N.W.2d 453, 455-56 (Iowa 1974) (holding that it was not an abuse of discretion to exclude testimony concerning assignment of promissory note), with *Guillermety v. Secretary of Education of United States*, 341 F. Supp. 2d 682 (E.D. Mich. 2003) (in action to collect on promissory note, Rule 1002 does not require plaintiff to whom note had been assigned to produce written assignment agreement).

REV. 153, 158-59 (1960) (cautioning against "the danger that particular cases will solidify into unalterable rules and thus be applied when the circumstances of the case would not merit such requirements").

The purpose, flexibility, and fact-intensive nature of the application of the best evidence rule persuade us that the following factors are appropriately considered when distinguishing between whether it is the content of the document or merely its existence that a witness intends to testify concerning:

> (a) the relative importance of content in the case, (b) the simplicity or complexity of content and consequent risk of error in admitting a testimonial account, (c) the strength of the proffered evidence of content, taking into account corroborative witnesses or evidence and the presence or absence of bias or self-interest on the part of the witnesses, (d) the breadth of the margin for error within which mistake in a testimonial account would not undermine the point to be proved, (e) the presence or absence of an actual dispute as to content, (f) the ease or difficulty of producing the writing, and (g) the reasons why the proponent of other proof of its content does not have or offer the writing itself.

5 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 570 (2d ed. 1994); *see also* MCCORMICK, *supra* at § 233 (arguing that application of the rule should turn "upon the trial judge's determination of such factors as the centrality of the writing to the litigation, the importance of bringing the precise words of the writing before the trier, and the danger of mistransmission or imposition in the absence of the original"). Although a court must be careful in applying these factors so as not "to hamper the inquiry without at all advancing the cause of truth," *United States v. Manton*, 107 F.2d 834, 845 (2d Cir. 1939) (Sutherland, J., sitting as circuit judge), we are persuaded that in this case the district court did not abuse its discretion in excluding the affidavits.

The affidavits in the present case were submitted to prove: 1) that an agreement between Union Pacific and Strong existed; 2) that it concerned the assignment of certain rights in land; 3) that one such right was to collect payments on the license agreement with CFS; and 4) the date upon

6

which that agreement was effective.  It is not disputed that Strong had the assignment agreement at its disposal, and it has provided no justification for its failure to submit admissible copies of them.  Nor is it disputed that the fact of assignment and the relevant time periods are facts critical and central to this litigation.  The assignment agreement in question could not have been identified as such without reference to its content.  Under these circumstances, it was not an abuse of discretion to exclude oral testimony of the transaction.[2]

B

Strong also contends that the district court erred when it excluded Exhibit D, a four-page excerpt of the assignment agreement between Strong and Union Pacific.  The district court held that Strong had failed to authenticate the exhibit and that it was an inadmissible duplicate of the original contract.

Federal Rule of Evidence 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  The district court noted that neither Pinker nor Armistead referred to the excerpt in their affidavits and that there was no other evidence on record that served to authenticate the document.  Strong relies on *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558 (5th Cir. 1998), for the proposition that because it had previously produced the excerpt in response to a discovery request, the exhibit was properly

---

[2] Strong's reliance on *R & R Associates, Inc. v. Visual Scene, Inc.*, 726 F.2d 36 (1st Cir. 1984), is misplaced. In that case, the district court admitted testimony concerning the cost of a quantity of merchandise to prove the plaintiff's damages.  The court held that the mere fact that some writing such as a receipt corroborated that testimony did not bar its admission.  *Id.* at 38.  The plaintiff's were not seeking to prove the content of those receipts, but instead the amount spent in a particular transaction, which was a fact independent of whether it was reduced to writing.  The disputed  transaction in the present case is a result, and therefore not independent, of the writing. In addition, the writing in the present case is central to the merits of the plaintiff's claim and is dispositive of the only disputed factual issue.

7

authenticated. In *McConathy*, a wrongful termination case, the district court admitted the plaintiff's application for social security benefits for the purpose of demonstrating that she was judicially estopped from denying the information she had provided in that form. *Id.* at 561. We held that the district court had not abused its discretion in concluding that the exhibit was properly authenticated where: "(1) [the plaintiff] produced the document in response to a discovery request, (2) the document bore [the plaintiff's] signature, (3) [the plaintiff] did not claim that the document is not authentic or that her signature is a forgery, and (4) [the plaintiff] acknowledged in her response to [the defendant's] motion for summary judgment that she requested total disability benefits for certain time periods." *Id.* at 562.

None of these criteria apply to the case at bar. Exhibit D was produced during discovery by Strong, the party seeking to benefit from the inference it provides. The document does not bear the signature of any of CFS's agents. Further, Strong does not indicate any place in the record where CFS has acknowledged the existence of any facts that would tend to authenticate the exhibit. Accordingly, it was not an abuse of discretion to exclude the exhibit pursuant to Federal Rule of Evidence 901.[3]

C

Strong argues that the district court abused its discretion when it excluded Exhibit G, a redacted version of the assignment agreement, pursuant to Federal Rule of Evidence 1003. Rule

---

[3] The district court also held that even were Exhibit D properly authenticated, it was inadmissible pursuant to Federal Rule of Evidence 1003(2), which prohibits the admission of a duplicate of a document where the circumstances render its admission unfair in lieu of the original. Strong does not argue that this holding was in error, and its challenge to the exclusion of Exhibit D is, in the alternative, waived. *See N.W. Enter., Inc. v. City of Houston*, 352 F.3d 162, 185-86 (5th Cir. 2003) (where appellant challenges only one of district court's alternative holdings, argument that the alternative holding was in error is waived).

8

1003 provides, "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." For a document to be a "duplicate," however, it must be "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original." FED. R. EVID. 1001(4).

The district court concluded that the redacted version of the agreement was neither the original writing nor a duplicate. Instead, based on physical inconsistencies between Exhibit G and Exhibit D, which Strong argued were duplicates of the same contract, the district court concluded that there was insufficient evidence to support a conclusion that Exhibit G was either an original or a duplicate of the assignment agreement. The page numbering of the two exhibits do not correspond to each other, and the two documents have different identifying marks in their lower left-hand corners. *Cf.* 31 WRIGHT & GOLD, *supra* at § 7167 ("In determining whether the copy is an accurate reproduction, the court may consider, amongst other evidence, the appearance of the very item in question."). We therefore cannot conclude that the district court's finding that Exhibit D was not a duplicate was clearly erroneous.

Strong contends, however, that when the district court ruled at the discovery conference that they need only disclose a redacted version of the agreement, omitting certain proprietary information, it was thereby required to admit what is apparently a retyped version of the contract. Contrary to Strong's assertion, the district court did not rule that a retyped version of the contract would be admissible. Rather, the court ruled that a redacted version would satisfy CFS's document request.

9

Not all discoverable material is admissible. *Wash. Metro. Area Transit Auth. v. One Parcel of Land in Prince George's County, Md.*, 342 F. Supp. 2d 378, 381 (D. Md. 2004); *see* FED. R. CIV. P. 26(b)(1) (stating that, in general, discoverable material must be relevant but need not be admissible if it "appears reasonably calculated to lead to the discovery of admissible evidence"); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Discoverable information is not limited to admissible evidence."). Moreover the district court's ruling did not require that the assignment agreement be redacted by means of *retyping* the entire agreement less the privileged portions.

Relying on *Ruberto v. Commissioner of Internal Revenue*, 774 F.2d 61 (2d Cir. 1985), Strong nevertheless argues that the district court should have provided it with an additional opportunity to submit an admissible copy of the contract before granting summary judgment on its claims. We disagree. The Rubertos petitioned the tax court *pro se* to contest the commissioner's determination that their donations to the Universal Life Church were not deductible. *Id.* at 62. The only factual issue in dispute was whether they had actually made the donations in question. *Id.* The commissioner subpoenaed the cancelled checks made out to the church, but the Rubertos only produced photocopies. *Id.* at 63. The Rubertos explained that they had received the subpoena on the previous Friday evening and that the hearing before the tax court was on the following Monday. *Id.* The weekend had not provided them with enough time to obtain the originals, which could be produced if they were permitted more time. *Id.* The Second Circuit held that refusing to allow the Rubertos a reasonable opportunity to submit the original checks was, under these circumstances, an abuse of discretion. *Id.* In the case at bar, however, Strong was represented by counsel, and there is no contention that it was given inadequate notice that it would be required to submit admissible evidence in support of its claim or that the basis for the motion for summary judgment was CFS's contention

10

that no assignment had occurred.  Accordingly, the exclusion of Exhibit G was not an abuse of discretion.

III

Strong contends that the district court erred when it granted summary judgment for CFS on the ground that it had failed to proffer admissible evidence of a valid contract between the parties. The parties also dispute whether Texas or Louisiana contract law applies to the merits of this claim. The district court concluded that the relevant substantive law of both states was the same and declined to resolve the issue.  We review a district court's decision on choice of law questions and motions for summary judgment *de novo*.  *GLF Constr. Corp. v. LAN/STV*, 414 F.3d 553, 556 (5th Cir. 2005) (summary judgment); *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (choice of law).

When a federal court sits in diversity jurisdiction, it must apply the choice of law rules of the forum state, in this case Texas.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005).  Texas courts apply the law of the state with the most significant relationship, as provided in the *Restatement (Second) of Conflict of Laws* (1971).  *See Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis.  *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 711 (Tex. App. ))Fort Worth 2003, no pet).  Strong contends that the district court erred in not applying Louisiana law exclusively, but it does not indicate any salient difference between the law of the two states.

Under both Texas and Louisiana law, a breach of contract claim requires the formation of a

11

valid and enforceable contract. *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 214 (Tex. App.) ) Dallas 2005, no pet.); *Landers v. Integrated Health Servs. of Shreveport*, 903 So.2d 609, 611 (La. App. 2005). Strong proffered no admissible evidence that it is a party to a valid written contract with CFS. Nevertheless, the existence of a contract can be implied from the parties' actions and conduct that indicate a mutual intent to be bound to their respective obligations. LA. CIV. CODE. ANN. art. 1927; *Ill. Cent. Gulf R.R. Co. v. Int'l Harvester Co.*, 368 So.2d 1009, 1011-12 (La. 1979); *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co., Inc.*, 480 S.W.2d 607, 609 (Tex. 1972).

Strong argues that even in the absence of a written contract, the parties formed an implied contract when Strong mailed rental invoices to CFS asking it to either make payments or remove its pipeline, and CFS did not respond. The district court held that under either Louisiana or Texas law, CFS did not accept Strong's offer to enter into a contract merely by failing to respond to the mailed invoices.

An implied contract is formed where the mutual intent to be bound is inferred from the conduct of the parties under the circumstances. *Haws & Garrett Gen. Contractors, Inc.*, 480 S.W.2d at 609; *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 573 (La. 1989). In order for conduct, as opposed to words, to serve as acceptance, a party's actions must be calculated to lead the offeror to believe that the offer had been accepted. 1 WILLISTON ON CONTRACTS § 4:16 (4th ed. 1991). Whether CFS's failure to remove its pipeline or pay rent constitutes an assent to be bound by a contract with Strong turns on what inference a reasonable person would draw from that conduct. *Haws & Garrett Gen. Contractors, Inc.*, 480 S.W.2d 609-10. As a general rule "silence and inaction will not be construed as an assent to an offer." *Tex. Ass'n of*

12

*Counties County Govt. Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 132 (Tex. 2000) (quoting 2 WILLISTON, *supra* at § 6:49); *see* LA. CIV. CODE ANN. art. 1927 (consent to a contract may be implied from silence where "the circumstances [are] clearly indicative of consent").

The only evidence that Strong contends demonstrates CFS's consent to a contract is its failure to remove its pipeline upon Strong's demand. Yet neither did CFS pay Strong the licensing fee. In the absence of any evidence that Strong had the right to exclude CFS from the property in question or that CFS accepted any service or thing of value from Strong, no reasonable jury could conclude that CFS's failure to remove its pipeline upon Strong's demand constituted consent to a contract.

IV

For the above stated reasons, we AFFIRM the judgment of the district court.

13