**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 13, 2012

No. 12-10236
Summary Calendar

Lyle W. Cayce
Clerk

ALBERT CRAMER,

Plaintiff–Appellant,

v.

NEC CORPORATION OF AMERICA; REDRIVER SYSTEMS, L.L.C.,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-1428

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Albert Cramer brought claims under the Age Discrimination in Employment Act[1] (ADEA) for failure to hire based on his age. He appeals the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 29 U.S.C. §§ 621-634.

No. 12-10236

district court's grant of summary judgment in favor of his potential employer.[2] We affirm.

## I

Albert Cramer (Cramer) worked as a contractor with 7-Eleven, Inc. (7-Eleven) for ten years. For the last nine years of his tenure he served as the company's "War Room" manager. The War Room provided technical and organizational support to the technicians who installed and configured hardware and software systems in 7-Eleven stores. In that role, Cramer led teams of technicians and other staff and was responsible for the timely completion of 7-Eleven's projects. Cramer also coordinated projects with other parties and often engaged outside vendors to troubleshoot technical issues.

Kevin Zvolanek (Zvolanek) worked for an outside vendor directly with the War Room as a technical liaison on 7-Eleven's projects. He regularly participated in the War Room activities, including daily meetings, for the last two years of Cramer's tenure as manager. Zvolanek was responsible for supporting and troubleshooting various software and hardware components in 7-Eleven stores. Prior to his work with 7-Eleven, Zvolanek held similar technical roles, including almost two years managing technicians for other customers.

In 2009, 7-Eleven decided to outsource the War Room's functions and began negotiations with NEC Corporation of America (NEC) to provide the new solution. Richard Shaver (Shaver), 7-Eleven's IT Manager, and Chris Merryman (Merryman), an NEC Project Manager, participated in the negotiations. The

---

[2] In a separate order, the district court granted summary judgment in favor of a second defendant, RedRiver Systems, L.L.C. That defendant is not a party to this appeal.

No. 12-10236

parties agreed that the solution provided by NEC—called the Deployment Support Team (DST)—should be more self-sufficient and more responsive than the War Room had been.  To that end, NEC would staff the DST with individuals who had more relevant technical skills, thus allowing the DST to solve more problems internally and avoid the frequent use of vendors that had been a characteristic of the War Room.

Merryman began to select staff for the DST toward the end of 2009. Merryman considered both Cramer and Zvolanek for manager of the DST. Merryman did not conduct formal interviews with either candidate but instead drew on his past experience and interaction with both.  Merryman had previously worked for a vendor that served 7-Eleven, and he had been present in the War Room on a weekly basis for several years, working with both Cramer and Zvolanek during that time.  Merryman had also interacted with Zvolanek in connection with work for another NEC client.  Ultimately, NEC hired Zvolanek over Cramer for the DST manager position "because it appeared to [Merryman] that Cramer did not have the technical or managerial abilities required to perform the position and that Cramer had not always satisfactorily performed services for 7-Eleven in the past."  At the time Zvolanek was hired, he was twenty-seven years old, and Cramer was sixty-four.

Cramer filed suit a few months later, alleging discrimination based on his age.  NEC moved for summary judgment, arguing that Cramer was unable to prove that but for his age, NEC would have hired him.  The district court granted summary judgment in favor of NEC.  Cramer now appeals, contending that the district court erred in granting summary judgment and erred in

No. 12-10236

refusing to admit a purported job description into evidence. We address Cramer's evidentiary issue first.

## II

Cramer argues that the district court erred by refusing to admit a document that he claims is NEC's job description for the DST manager position. The court held that there was insufficient evidence to authenticate the document.[3] As evidence of authenticity, Cramer notes that NEC produced the document during discovery and that Merryman admitted in his deposition that the document "could be" a copy of the DST manager's job description.

We review the district court's decision to exclude evidence for abuse of discretion.[4] It is within the court's discretion to exclude evidence that has not been properly authenticated.[5] The Federal Rules of Evidence do not require conclusive proof of authenticity, but the proponent of a document must present "evidence sufficient to support a finding that the item is what the proponent claims" as a prerequisite to admission.[6]

We agree with the district court that Cramer did not present sufficient evidence to authenticate the document. At most, the evidence shows that the document "could be" the DST manager job description. The discovery request was too broad to provide evidence of authenticity, the document itself bears no

---

[3] *Cramer v. NEC Corp. of Am.*, No. 3:10-CV-1428-L, 2012 WL 369538, at *6 n.* (N.D. Tex. Feb. 3, 2012).

[4] *R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 217 (5th Cir. 2005).

[5] *Id.* at 220.

[6] FED. R. EVID. 901(a); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998).

4

No. 12-10236

indication of authenticity, and Merryman's deposition testimony was noncommittal. We therefore hold that the district court did not abuse its discretion in excluding the document.[7]

## III

We review the grant of summary judgment de novo, applying the same standard as the district court.[8] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] A genuine dispute of material fact exists when the evidence would permit a reasonable jury to return a verdict in favor of the nonmovant.[10] We view all evidence in the light most favorable to the nonmovant and make all reasonable inferences in favor of the nonmovant.[11] However, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."[12]

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's age."[13] A plaintiff

---

[7] *See R.R. Mgmt.*, 428 F.3d at 220 (holding that exclusion of an exhibit was not an abuse of discretion absent indicia of authenticity within the exhibit itself or other evidence on the record tending to authenticate the exhibit).

[8] *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

[9] FED. R. CIV. P. 56(a); *see Jackson*, 602 F.3d at 377.

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[11] *Ramsey v. Henderson*, 286 F.3d 264, 267 (5th Cir. 2002).

[12] *Id.* at 269 (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)) (internal quotation marks omitted).

[13] 29 U.S.C. § 623(a)(1).

No. 12-10236

bringing suit under the ADEA has the ultimate burden of persuasion to show that intentional age discrimination was the but-for cause of the employer's action.[14]    When a plaintiff seeks to prove age discrimination through circumstantial evidence, this circuit applies the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[15] Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by showing that the plaintiff was a member of the protected class at the relevant time, the plaintiff was qualified for the position, the plaintiff was rejected, and the position was filled by a person not in the protected class.[16] Although NEC disputes that Cramer established a prima facie case of age discrimination, we assume, without deciding, that he has.  In response to the prima facie showing, the defendant is required to proffer at least one legitimate, nondiscriminatory reason for its action.[17]    NEC offered three reasons for declining to hire Cramer: that he did not have the requisite technical skills, that he did not have the requisite management skills, and that he had not always performed his duties as War Room manager to 7-Eleven's satisfaction.  Under *McDonnell Douglas*, the burden then shifted back to Cramer to produce evidence

---

[14] *Jackson*, 602 F.3d at 377 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

[15] 411 U.S. 792 (1972); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

[16] *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999) (citing *McDonnell Douglas*, 411 U.S. at 802).

[17] *Machinchick*, 398 F.3d at 350.

that each of these nondiscriminatory reasons is merely pretext for discrimination.[18]

A plaintiff may show that the employer's nondiscriminatory reason was pretextual by evidence of disparate treatment or evidence that the "proffered explanation is false or unworthy of credence."[19] In addition, evidence that the plaintiff was "clearly better qualified" is by itself sufficient to prove that the employer's explanations were pretext for discrimination.[20] Cramer does not present any evidence of disparate treatment, but he does argue he has presented sufficient evidence that he is clearly better qualified and that each of NEC's nondiscriminatory reasons is unworthy of credence.[21] We address these two arguments separately.

## A

Cramer first contends that there is sufficient evidence that a jury could find that he is clearly better qualified. We disagree. Differences in qualifications among candidates are "generally not probative evidence of discrimination" unless one candidate is so clearly better qualified that no reasonable employer would have made the same hiring decision.[22] Cramer

---

[18] *Id.*

[19] *Moss v. BMC Software*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotation marks omitted).

[20] *Id.*

[21] NEC argues that much of the evidence Cramer relies on would be inadmissible and therefore may not be considered for summary judgment. Because we hold that Cramer's evidence is insufficient even if admitted, we do not reach this issue.

[22] *Moss*, 610 F.3d at 923 (quoting *Celestine v. Petroleas de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)) (internal quotation mark omitted).

No. 12-10236

states that he is clearly better qualified because he had thirty years of management experience while Zvolanek had none, he had ten years of experience in an identical position while Zvolanek had none, and he had demonstrably more technical skills than Zvolanek. However, comparison of two reasonable candidates with disparate credentials merely constitutes a difference of opinion, and "[d]isagreements over which applicant is more qualified are employment decisions" that this court will not presume to second guess.[23] Cramer overstates the differences in qualifications and his conclusion that his own credentials are much more impressive than Zvolanek's is merely an opinion and not evidence of discrimination.

The undisputed record demonstrates that both candidates possess relevant experience, including technical and management experience. While Zvolanek's tenure in the workforce is shorter than Cramer's, we have repeatedly held that years of experience alone do not equate to clearly superior qualifications.[24] NEC intended the DST to be more self-sufficient than the War Room by requiring the manager and staff to resolve more technical issues directly rather than relying on vendors. Cramer's direct supervisor, Shaver, stated that Cramer's technical skills were limited to following established procedures, while Zvolanek's technical skills were more current and more directly related to hands-on troubleshooting. That Zvolanek's technical skills were both more recent and more directly related to the job at issue is a relevant consideration.[25]

---

[23] *See Scott v. Univ. of Miss.*, 148 F.3d 493, 508-09 (5th Cir. 1998), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000).

[24] *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).

[25] *Moss*, 610 F.3d at 923-24.

The record demonstrates that Zvolanek was qualified for the position. Whether NEC made the best hiring decision or even a good decision is irrelevant.[26] The differences in the candidates' experience would be probative of discrimination only if the evidence would allow a jury to find that no reasonable employer would have hired Zvolanek over Cramer. Because the evidence of their respective experience does not support such a finding, Cramer has failed to raise a genuine question of whether he is clearly better qualified.

## B

Cramer also argues that he produced sufficient evidence to show that NEC's nondiscriminatory reasons were false or unworthy of credence. NEC's three reasons were articulated by Merryman, who stated that "it appeared to me that Cramer did not have the technical or managerial abilities required to perform the position and that Cramer had not always satisfactorily performed services for 7-Eleven." To survive summary judgment, Cramer has the burden to rebut each of these nondiscriminatory reasons with sufficient evidence to permit a jury to find that age discrimination was the but-for reason for NEC's decision.[27] The relevant inquiry is not whether NEC's assessment of Cramer was accurate because "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason."[28] Rather, we

---

[26] *See Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) ("[I]t is not the function of the jury to scrutinize the employer's *judgment* as to who is best qualified to fill the position; nor is it the jury's task to *weigh* the respective qualifications of the applicants.").

[27] *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

[28] *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

are concerned only with whether NEC's assessment was the real reason for its hiring decision.

Cramer first asserts that Merryman's use of the term "appeared" in his explanation was insufficiently firm and therefore unworthy of credence. This argument is unpersuasive. That Cramer "appeared" to NEC to be unfit for the position is precisely their nondiscriminatory reason. NEC need not be correct in its assessment, only worthy of credence.

As to NEC's first nondiscriminatory reason, Cramer alleges that Merryman had insufficient information to assess his technical skills because Merryman had not worked with Cramer for several years, had failed to conduct a formal interview, and had misrepresented to Shaver that he had interviewed Cramer. Cramer also contends that his resume and experience demonstrates that NEC had no basis for believing he lacked the proper technical skills.

These arguments miss the point. That Merryman could have used a different means of assessing the candidates is no evidence that Merryman's assessment was a pretext for discrimination. Merryman treated Cramer and Zvolanek equally, interviewing neither one. Merryman had access to their resumes, worked with both in the War Room for several years, and had ample opportunity to observe their technical skills. Similarly, Merryman's alleged "lie" about interviewing Cramer is not relevant. Merryman testified only that he told Shaver he had "talked to Cramer" about the DST manager position—a fact that Cramer does not dispute, and Merryman's isolated, innocuous comment is not probative of pretext. Finally, the affirmative evidence of Cramer's technical skills is also unpersuasive. The material issue is not whether Cramer was qualified or even possibly more qualified than Zvolanek. The court is concerned

not with whether NEC made the right hiring choice but whether its proffered reason for that choice is unworthy of credence. We agree with the district court that none of Cramer's evidence is probative of whether NEC's first nondiscriminatory reason was baseless and therefore pretextual.

Cramer's evidence concerning NEC's second and third nondiscriminatory reasons (that his management style and past performance for 7-Eleven were deficient) is equally unpersuasive. Merryman and Shaver both stated that Cramer had a reputation for being aggressive. Merryman further described Cramer as occasionally demeaning to others, prone to frequent arguments with employees, and reluctant to take suggestions from vendors or others with regard to troubleshooting problems. Cramer himself admitted that he "butted heads" with people when he felt they did not have the answers he needed. Cramer does not dispute that he had an "aggressive style" but argues that it made him successful as War Room manager and points to his ten years of continued employment as corroboration. Cramer also notes that Shaver testified that Cramer's dedication to the War Room was "second to none."

As with whether he is "clearly better qualified," Cramer overstates the evidence. At most the record shows that Merryman and Shaver had different opinions about Cramer's performance as War Room manager. The parties agree that Cramer was aggressive in his interactions with vendors and employees alike and that his style of management involved frequent use of vendors for troubleshooting. NEC has shown that the DST manager position required a different management approach than Cramer's, and Cramer has not pointed to any evidence that calls into question the credibility of NEC's claim. As we have already noted, the ADEA does not prohibit an employer from making a bad

No. 12-10236

hiring decision, only a discriminatory one, and this court "should not substitute [its] judgment of an employee's qualifications for the employer's in the absence of proof that the employer's nondiscriminatory reasons are not genuine."[29] While Cramer may have shown that NEC could have been mistaken in its assessment, he has provided no evidence that NEC's perception of his temperament or job performance is false or unworthy of credence.

\*      \*      \*

Taken as a whole and in the light most favorable to Cramer, the evidence does not raise a genuine issue of material fact as to whether NEC's nondiscriminatory reasons for failing to hire Cramer were pretext for age discrimination. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of NEC.

---

[29] *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).