# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 1, 2014

Lyle W. Cayce
Clerk

No. 12-30918

REYMOND MEADAA; HARRY HAWTHORNE; JOSE MATHEW; DINESH SHAW; NAVTEJ RANGI; NAJA HOLDINGS, L.L.C.; HULENCI, L.L.C.,

Plaintiffs–Appellees,

v.

K.A.P. ENTERPRISES, L.L.C.; ARUN K. KARSAN; VERSHA PATEL KARSAN; SAINATH, L.L.C.,

Defendants–Appellants.

Appeal from the United States District Court
for the Western District of Louisiana

Before OWEN, SOUTHWICK, and GRAVES, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

In this interlocutory appeal, Arun K. Karsan, Versha Patel Karsan, K.A.P. Enterprises, L.L.C., and SaiNath, L.L.C. (defendants) appeal the district court's grant of partial summary judgment in favor of seven investors. Defendants challenge both the district court's conclusion that there was a failure of consideration because the investors did not receive the agreed upon consideration in return for their investment and the district court's order holding all of the defendants jointly and solidarily liable. We affirm in part and vacate in part.

No. 12-30918

**I**

Dr. Arun K. Karsan and Versha Patel Karsan (the Karsans) formed K.A.P. Enterprises, L.L.C. (K.A.P.), as a holding company for their personal investments. Five months later, K.A.P. executed a letter of intent to purchase the Louisiana Hotel and Convention Center (the hotel) out of bankruptcy. To finance the purchase, K.A.P. obtained a $6.7 million loan from Red River Bank (the Bank), which the Karsans personally guaranteed. The loan agreement required K.A.P. to raise an additional $2.75 million to renovate the hotel.

The Karsans thereafter invited some of Dr. Karsan's medical colleagues, including the plaintiffs (the investors),[1] to an investment presentation on November 22, 2006 at Copeland's restaurant. The presentation, titled "Louisiana Hotel & Convention Center," described the hotel and the Karsans' plans for its renovation. Additionally, it offered the investors two different investment options: a "private debt" offering and an "equity" offering. The latter permitted investors to become "Share Certificate Holder[s]" and "Participate in [the] Profits or Dividends" for $125,000 per share. The presentation, however, did not identify the entity from which shares were being offered. Nor did the presentation mention K.A.P. or discuss what entity owned or would own the hotel.

About a week after the presentation, Mrs. Karsan formed SaiNath, L.L.C. (SaiNath), and designated Dr. Karsan and herself as the company's members and managers. Shortly thereafter, each of the investors signed a "Letter of Interest," agreeing to purchase "share units" of SaiNath for "$125,000 per share unit." Although the letters of interest did not say that SaiNath was to own the hotel, the words "(Louisiana convention center and

---

[1] Not all of the individuals who invested in the hotel have filed suit. For the sake of brevity, however, we refer to the plaintiff investors as "the investors."

hotel)" appeared at the top of the page in large font, immediately below the "Letter of Interest" title. Additionally, the letter stated that "[t]he date of this confidential private offering memorandum began on 11/22/2006 during a presentation of the business at the Copeland's Restaurant in Alexandria, LA." Collectively, the investors purchased 28 equity shares for $3.5 million. It is undisputed that the Karsans and each of the investors intended for SaiNath to own the hotel.

The investors' funds ultimately were deposited into a bank account in SaiNath's name. The money was used to renovate the hotel and pay down K.A.P.'s loan from the Bank. Title to the hotel, however, has not been transferred to SaiNath. Instead, for accounting purposes at least, SaiNath has paid "rent" to K.A.P. in exchange for the hotel's revenues. Additionally, the Karsans remain the sole record members and managers of SaiNath. Nonetheless, the Karsans have treated the investors as members of SaiNath when preparing both tax and financial documents.

Almost three years after SaiNath was formed, the investors filed suit against the Karsans, K.A.P., and SaiNath. In their complaint, the investors alleged various causes of action against K.A.P. and the Karsans, including breach of contract and violations of the Securities Exchange Act of 1934. They did not assert any causes of action against SaiNath, except to demand a formal accounting pursuant to Louisiana corporate law. The district court initially granted a motion for partial summary judgment filed by the investors (the May 2010 order), holding all of the defendants liable for breach of contract and ordering them to return the $3.5 million paid by the investors. Subsequently, however, the district court granted in part a motion by K.A.P. and the Karsans to alter or amend the judgment (the August 2010 order). The court reaffirmed its holding that there had been a breach of contract but determined that its

decision to hold the Karsans personally liable "rest[ed] upon unclear grounds" because there was "at least some argument that the Karsans, as members of Sainath, may have been operating under . . . the 'corporate veil.'" The court therefore withdrew its grant of partial summary judgment and ordered supplemental briefing on the issue of which defendants should be held liable.

In their supplemental brief, the Karsans and K.A.P. included an affidavit by Kurt Oestriecher. Finding some of Oestriecher's conclusions not based on personal knowledge, the district court granted the investors' motion to strike the affidavit (the September 2011 order). After further consideration, the district court issued a supplemental ruling holding each of the defendants liable for the return of the $3.5 million (the December 2011 order). The court held that SaiNath was obligated to return the money it had received because there had been a failure of consideration. The court found K.A.P. liable on the ground of unjust enrichment and that the Karsans were liable "through a piercing of the [corporate] veil of SaiNath." After the court denied defendants' motion to alter or amend the judgment (the March 2012 order), it certified the December 2011 judgment pursuant to Federal Rule of Civil Procedure 54(b). This appeal followed.

## II

Prior to examining the merits of the parties' dispute, we must determine the scope of our jurisdiction.[2] In their notice of appeal, defendants state that they are appealing five orders: (a) the May 2010 order initially granting partial summary judgment; (b) the August 2010 order granting in part and denying in part the Karsans' and K.A.P.'s motion to alter or amend; (c) the September 2011 order granting plaintiffs' motion to strike the affidavit of Kurt Oestriecher; (d) the December 2011 order reinstating partial summary

---

[2] *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010).

judgment in favor of plaintiffs and holding defendants jointly and solidarily liable; and (e) the March 2012 order denying defendants' motions to alter the December 2011 order. The district court, however, did not certify all of these judgments in its Rule 54(b) order. It listed only the December 2011 order in the certification. In light of this discrepancy, plaintiffs have moved this court to dismiss defendants' appeal of the other four orders for lack of jurisdiction.

Plaintiffs argue that this court lacks jurisdiction to review the four orders because "Rule 54(b) only grants an appellate court jurisdiction to review final judgments that are explicitly designated as such under the Rule." This is a misstatement of the law. "A proper Rule 54(b) judgment is a final judgment for all purposes on the adjudicated claims."[3] When such a judgment is appealed, therefore, "all interlocutory orders of the district court leading up to the judgment merge into the final judgment and become appealable at that time."[4] On appeals from Rule 54(b) judgments, this court has reviewed discovery and other interlocutory orders that underlie those judgments.[5] Three of the four non-certified orders listed in defendants' notice of appeal (all but the March 2012 order) are non-final orders that led up to the December

---

[3] 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 54.28[3][c] (3d ed. 2014) (citation omitted); *see also Smith v. Mine Safety Appliances Co.*, 691 F.2d 724, 725 (5th Cir. 1982) ("For purposes of appealability, a judgment entered pursuant to [Rule 54(b)] is a final judgment . . . .").

[4] 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE—CIVIL § 54.28[3][c] (3d ed. 2014) (citation omitted); *see also Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1102 (5th Cir. 1983) ("Under the final judgment appealability rule, a party may obtain review of prejudicial adverse interlocutory rulings upon his appeal from adverse final judgment, at which time the interlocutory rulings (nonreviewable until then) are regarded as merged into the final judgment terminating the action.").

[5] *See, e.g.*, *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 893-94 (5th Cir. 2013) (reviewing on appeal of Rule 54(b) judgment the district court's order limiting discovery).

No. 12-30918

2011 judgment and merge into it.  We therefore have jurisdiction to review those decisions.

The March 2012 order, however, came after the December 2011 order. The parties have not pointed to a case from this circuit that addresses whether courts of appeals possess jurisdiction to review a denial of a Rule 59 motion to alter or amend a certified judgment, and our independent research has not revealed any.  At least one of our sister circuits, however, has considered the issue and concluded that such judgments are subject to review.[6]  Such a conclusion is eminently sensible.  An order affirming a prior judgment is just as much an integral part of that judgment as the evidentiary rulings that paved the way to the judgment.  Furthermore, it would be a needless waste of judicial resources to require the parties to return to the district court to certify the same essential judgment and then appeal it anew.[7]  We therefore conclude that we possess jurisdiction to review all of the orders listed in defendants' notice of appeal.

## III

Turning to the merits, we review "a grant of summary judgment *de novo*, applying the same standards as the district court."[8]  Under those standards, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[6] *See Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 811 (9th Cir. 1981) (holding that it had jurisdiction to review denial of motions under Rules 59 and 60 that were filed and denied after the entry of judgment under Rule 54(b)), *overruled on other grounds*, *Puchall v. Houghton, Cluck, Coughlin & Riley (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 823 F.2d 1349 (9th Cir. 1987).

[7] *Cf.* FED. R. APP. P. 4(a)(4)(A)(iv) (providing that the time to file a notice of appeal does not begin to run until the court disposes of a Rule 59 motion).

[8] *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 469 (5th Cir. 2009).

as a matter of law."[9]  "On review of a grant of summary judgment, all facts and inferences must be construed in the light most favorable to the non-movant," in this case the defendants.[10]

We review a district court's exclusion of evidence submitted in a summary judgment proceeding for abuse of discretion.[11]  "Resolution of preliminary factual questions concerning the admissibility of evidence are reviewed for clear error."[12]  A district court's decision not to amend or alter a judgment under Rule 59(e) is also reviewed for abuse of discretion.[13]

## IV

We first consider the district court's order striking the affidavit of Kurt Oestriecher.  K.A.P. and the Karsans attached the affidavit to their supplemental brief concerning which defendants should be held liable for the return of the $3.5 million.  In the affidavit, Oestriecher, a certified public accountant, reached various conclusions regarding SaiNath's financial and accounting history and the financial transactions between the company and both the Karsans and K.A.P.  He concluded, for instance, that "the transactions of SaiNath have not resulted in any direct advantage to the Karsans to the detriment of the Plaintiffs as members of SaiNath" and that SaiNath had been treated from an accounting standpoint as separate and distinct from both the Karsans and K.A.P.  Oestriecher attested that these conclusions were based on "personal knowledge, information and belief" and that he had reviewed

---

[9] FED. R. CIV. P. 56(a).

[10] *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 248 (5th Cir. 2008).

[11] *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 217 (5th Cir. 2005).

[12] *Id.*

[13] *Morris v. PLIVA, Inc.*, 713 F.3d 774, 776 (5th Cir. 2013).

K.A.P.'s tax returns as well as SaiNath's bank statements, general ledgers, and tax returns.

Notwithstanding Oestriecher's attestations, the district court found that the affidavit failed to meet the personal knowledge requirement of Federal Rule of Civil Procedure 56. The court reasoned that the documents Oestriecher reviewed could not provide him with personal knowledge of a number of the conclusions in the affidavit. K.A.P.'s tax returns and SaiNath's financial documents could not allow Oestriecher to know that SaiNath's transactions failed to confer a benefit on the Karsans or harm the investors, or that there had been no commingling of assets. As a result, the court concluded, the "affidavit lack[ed] the factual basis necessary for Mr. Oestriecher to reach a number of his conclusions." K.A.P. and the Karsans argue that this ruling was erroneous because, as a certified public accountant, Oestriecher could have determined whether there was a commingling of funds and the extent to which benefits and detriments were conferred simply by consulting the documents he examined.

Federal Rule of Civil Procedure 56(c)(4) provides that an affidavit "used to support or oppose a motion" for summary judgment "must be made on personal knowledge."[14] We have repeatedly held that an affidavit does not meet this requirement simply because the affiant states that her conclusions are based on personal knowledge. Rather, the affiant must provide the district court with sufficient information to allow the latter to conclude that the affiant's assertions are indeed based on such knowledge.[15]

---

[14] FED. R. CIV. P. 56(c)(4).

[15] *See, e.g., United States v. $92,203.00 in U.S. Currency,* 537 F.3d 504, 507-08 (5th Cir. 2008); *Askanase v. Fatjo,* 130 F.3d 657, 673 (5th Cir. 1997).

No. 12-30918

The district court did not commit clear error in finding that Oestriecher lacked personal knowledge of the conclusions he was asserting. It is by no means clear how a certified public accountant can obtain personal knowledge of the effects of the actions of one entity on other parties without reviewing the latter's financial documents. If Oestriecher was able to gain such knowledge about the Karsans and the investors merely by consulting SaiNath's financial statements and K.A.P.'s tax returns, it was incumbent upon him to explain how he acquired such knowledge. In the absence of that explanation, we cannot form "the definite and firm conviction that a mistake has been committed."[16] Accordingly, we conclude that the district court did not abuse its discretion in striking Oestriecher's affidavit.

## V

We next consider whether the district court erred in granting plaintiffs' motion for partial summary judgment. The district court concluded that there had been a failure of consideration as a matter of law because "(1) the transfer of the Convention Center to Sainath was the paramount purpose of forming the company, purchasing membership units in it, and maintaining its existence; and (2) the Convention Center was never transferred to Sainath." The investors did not receive what they were entitled to receive under the contract, which was equity interests in an entity that owned and operated the hotel. Under Louisiana Civil Code article 2485, a buyer may seek dissolution of a sale when the seller fails to deliver the thing sold.[17] The district court accordingly held that plaintiffs were entitled to dissolve the sale and to a return of their $3.5 million investment.

---

[16] *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985).

[17] LA. CIV. CODE ANN. art. 2485 (2013).

9

No. 12-30918

Defendants offer a number of arguments as to why the district court's conclusion was erroneous. First, K.A.P. and the Karsans contend that the district court failed to apply Louisiana Civil Code article 2456. That provision states that "[o]wnership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid."[18] Defendants argue that since the parties agreed that the investors would pay $125,000 per share of an entity owning the hotel, "the District Court should have concluded that the sale had been perfected *between the parties to the sale* even though the thing sold had not yet been delivered (i.e. moving record title ownership of the Convention Center into SaiNath)."

We disagree. Although article 2456 provides for the transfer of ownership at the moment of agreement, it does not purport to limit a buyer's rights in the event the seller fails to deliver the item sold, including a buyer's right under article 2485 to seek dissolution.[19] Louisiana courts have never given the provision such a construction. Further, even if article 2456 negated a buyer's rights under article 2485, it would not have the effect of transferring the hotel from K.A.P. to SaiNath or directly to the investors because the parties never agreed upon the terms of such a transfer. The investors had no agreement with K.A.P. Nor did SaiNath. SaiNath could not require K.A.P. to transfer ownership of the hotel. The Karsans, who were the sole members of K.A.P., desired SaiNath to assume K.A.P.'s mortgage from the Bank, but the investors opposed this plan. The "price" of transferring ownership of the hotel from K.A.P. to SaiNath was not "fixed" within the meaning of article 2456.

---

[18] *Id.* art. 2456.

[19] *Id.*

No. 12-30918

K.A.P. and the Karsans argue that, irrespective of who technically owns the hotel, there was no breach of contract because "Plaintiffs derived exactly the same benefit and are in exactly the same position as they would have been had record title been transferred into the name of SaiNath." This is so, they claim, because the Karsans have provided plaintiffs with financial documents reflecting their proportional ownership of SaiNath and the revenue identified in these documents "was being generated by the operation of the Convention Center by SaiNath." As a result, the failure to transfer the hotel was not a breach of the contract. This contention is also unavailing.

Louisiana Civil Code article 2475 provides that a seller's duty is "to deliver the thing sold."[20] Throughout the litigation, the parties have consistently agreed that the "thing[s] sold" were equity interests in an entity that would own and operate the hotel. Ample evidence in the record supports this conclusion. During her deposition, Mrs. Karsan stated that the contract was for the sale of interests in a company that was to "own and operate the convention center." In the answer filed by the Karsans and K.A.P., they likewise noted that "the plaintiffs . . . were invited to become members of a new limited liability company that would own the hotel." The parties also agree that SaiNath does not own the hotel. That the Karsans prepared financial statements showing SaiNath as being in the same position as if it did own the hotel is irrelevant. The plaintiffs did not agree to be owners of a company that rented the hotel without a binding legal agreement and subject to the whims of K.A.P. Similarly, it is not sufficient that SaiNath operates the hotel because the contract requires that the company *own* and operate the facility. As the district court reasoned, even if the defendants' treatment of the plaintiffs as

---

[20] *Id.* art. 2475; *see also Derbonne v. Burton*, 189 So. 473, 474 (La. Ct. App. 1939) ("[I]f the seller fails to deliver the thing sold at the time agreed upon, the buyer may demand a cancellation of the sale . . . .").

members of SaiNath made them members of the company, the investors would still not have received the benefit of the bargain, which was ownership of a company that owned and operated the hotel.

SaiNath also asserts that there was no breach of contract, but for different reasons. It contends that the contract was simply for the sale of equity interests in SaiNath and that the investors have received such interests.[21] That SaiNath does not own the hotel is a matter that should be resolved through a different cause of action, such as a suit under the Exchange Act or an action for misrepresentation, SaiNath maintains. SaiNath further argues that, if there was a breach of contract, the plaintiffs are not entitled to recovery because their failure to sign the Operating Agreement and their initiation of the instant litigation constituted bad faith and/or negligence. However, these contentions have not been properly preserved for appeal because they were not raised in the district court.[22] The Karsans and K.A.P. assert these same arguments for the first time in their reply brief, which, as appellants, they may not do.[23]

Over the course of three years of litigation, SaiNath did not assert that the contract was simply for the sale of equity interests in SaiNath. Instead, it

---

[21] Although one can construe SaiNath's opening brief as making this argument, it is by no means clear that this was the party's intended contention. For elsewhere in the brief SaiNath concedes that the contract was for the sale of a company that owned the hotel. Only in their reply brief and at oral argument did SaiNath clearly contend that there was no breach of contract because the contract consisted only of the sale of interests in a company and the plaintiffs received those interests. For this reason alone, the argument is waived. *See Steering Comm. v. Wash. Grp. Int'l, Inc. (In re Katrina Canal Breaches Litig.)*, 620 F.3d 455, 459 n.3 (5th Cir. 2010) (holding that arguments not raised in the opening brief are waived).

[22] *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000) ("We do not consider issues raised for the first time on appeal except in extraordinary instances when such consideration is required to avoid a miscarriage of justice . . . .").

[23] *Katrina Canal Breaches Litig.*, 620 F.3d at 459 n.3.

and its member-managers consistently took the position that the contract was for the sale of interests in an entity that owned and operated the hotel. Even in its reply brief in this court, SaiNath states that "a thorough review of the sale documents and *pro forma* reveals that intent of the sale was to convey *equity units* in a company that *owned and operated* a hotel." Similarly, neither SaiNath nor any of the other defendants ever averred that plaintiffs were barred from recovery as a result of bad faith or negligence.[24]

SaiNath contends that it did not waive any arguments by failing to raise them before the trial court because "Plaintiffs' complaint and motion for summary judgment names SaiNath as a 'nominal' and 'derivative' defendant." SaiNath argues that it "had no reason to assert affirmative defenses until the trial court issued its judgment in equity against SaiNath." This assertion lacks support in the record. Although the investors did not initially seek damages from SaiNath, the district court explicitly informed the parties that it was considering holding SaiNath liable for return of the $3.5 million investment. The court specifically asked that the parties brief "whether one or both of the corporate defendants [i.e., K.A.P. and SaiNath] may or should also be liable individually, jointly, or in solido, for the refund mandated by the Court's judgment." This is thus not an "extraordinary instance[]" in which this court's refusal to consider an issue first raised on appeal will result in "a miscarriage

---

[24] SaiNath asserts that the Karsans and K.A.P. placed the issue of bad faith before the district court. The record does not support this contention. In their reply brief in support of their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), K.A.P. and the Karsans contended that "Plaintiffs Thwarted The Transfer Of The Hotel And Convention Center From KAP To SaiNath." This point was not made in order to assert that plaintiffs were barred from recovery as a consequence of Louisiana contract law. Instead, it was made simply to show that the matter belonged in state court because the investors did not have a claim under the Exchange Act. At no point over the course of the litigation did any defendant contend that plaintiffs were precluded from recovering for breach of contract as a result of plaintiffs' bad faith or negligence.

of justice."[25] We do not address the arguments raised for the first time on appeal.

## VI

Lastly, we consider whether the district court erred in holding all of the defendants liable for the return of the $3.5 million. In reaching this conclusion, the district court analyzed each defendant's liability separately. The court held that SaiNath was obligated to return the money it had received because there had been a failure of consideration and that K.A.P. was liable for the return of the funds because it had been unjustly enriched by the receipt of plaintiffs' funds. The district court imposed liability upon the Karsans "through a piercing of the veil."

The district court did not err in finding SaiNath liable. The investors paid SaiNath substantial amounts to become members of SaiNath with the understanding that SaiNath would obtain ownership of the hotel. All of the invested funds were deposited into SaiNath's account. The district court did not err in finding that there was a failure of consideration in this transaction because SaiNath never obtained ownership of the hotel.

Nor did the district court err in holding K.A.P. liable under a theory of unjust enrichment. Although K.A.P. argues that the investors have other remedies available at law against SaiNath and the Karsans, that is irrelevant. The focus is whether the investors have an adequate remedy at law against K.A.P. The investors have no contract or other agreement with K.A.P. No representations were made by K.A.P. to the investors. The investors were not informed of the existence of K.A.P. when the investment was structured. The $3.5 million paid by the investors to SaiNath was directed to K.A.P. without the investors' knowledge or consent. Those funds were used by K.A.P. to

---

[25] *Bayou Liberty Ass'n, Inc.*, 217 F.3d at 398.

improve property it owned and to pay down K.A.P.'s debt to the Bank. The investors received nothing in return, other than perhaps certain tax benefits. The district court did not err in holding that under Louisiana law, including article 2298,[26] K.A.P. was unjustly enriched at the expense of the investors and should be required to return the investment proceeds that SaiNath directed to K.A.P.

The district court held that the Karsans were liable "through a piercing of the veil." Since the district court's decision, the Supreme Court of Louisiana has issued a decision in *Ogea v. Merritt*[27] that considers the extent of the limitation of liability afforded a member of a limited liability company. The Louisiana court has authoritatively construed Louisiana Revised Statutes § 12:1320. The district court did not have the benefit of this decision when it analyzed "piercing of the veil." We remand for the district court to consider, in the first instance, the application of the Louisiana court's analysis to the facts of the present case. In so doing, we do not, of course, limit the district court to a theory of liability based on piercing the corporate veil in determining if the Karsans are individually liable to the investors.

\* \* \*

We affirm the district court's partial summary judgment as to SaiNath and K.A.P. We vacate and remand as to the Karsans in their individual capacities for further proceedings.

---

[26] LA. CIV. CODE. ANN. art. 2298 (2013).

[27] 2013-1085 (La. 12/10/13); 130 So. 3d 888.