# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2016

Lyle W. Cayce
Clerk

No. 15-30413

REYMOND MEADAA; HARRY HAWTHORNE; JOSE MATHEW; DINESH SHAW; NAVTEJ RANGI; NAJA HOLDINGS, L.L.C.; HULENCI, L.L.C.,

Plaintiffs - Appellees

v.

ARUN K. KARSAN; VERSHA PATEL KARSAN,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, SMITH, and HIGGINSON, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this case, we review the district court's summary judgment on a number of alternate theories in favor of plaintiff investors who purchased securities from defendants. We focus on one of plaintiffs' theories under Louisiana Revised Statutes §§ 51:712(A)(2) and 51:714, which allows purchasers of securities to recover their investment from the seller of the securities, who made the sale based on false representations. Plaintiffs contend that the defendants sold securities representing shares in SaiNaith L.L.C. based on false statements that a hotel was owned by that company.

No. 15-30413

We agree with the district court that the summary judgment evidence establishes that SaiNaith never owned the hotel and the investors received interests in a shell company and defendants violated Louisiana law by representing otherwise. Thus, we AFFIRM the judgment in favor of plaintiffs against defendants personally under Louisiana Revised Statutes §§ 51:712(A)(2) and 51:714.

I.

On November 7, 2007, Dr. Arun Karsan and Versha Patel Karsan executed an agreement to purchase the Louisiana Hotel and Convention Center (the Hotel) in Alexandria, Louisiana through their wholly owned company K.A.P. Enterprises (KAP). KAP arranged to finance its purchase with a loan from Red River Bank (the Bank). The Bank agreed to loan KAP $6.7 million toward the purchase price but also required that KAP raise an additional $2.75 million to renovate the Hotel.

Several of Dr. Karsan's colleagues had expressed an interest in participating in the project, so the Karsans decided to offer them a chance to invest. On November 22, 2006, the Karsans hosted a dinner and presentation for potential investors. The presentation, which was titled "Louisiana Hotel & Convention Center," described the facility's history, explained its current condition, detailed the Karsans' plans for its renovation, and finally, outlined the "Investor Opportunity" for attendees.

The Karsans told attendees that they could become either a "Private Debt" holder or an "Equity" holder. Private debt holders would receive a promissory note entitling them to periodic interest payments with the principal due on a set date. Meanwhile, an equity holder would receive a "share certificate" and "participate in the profits and losses."

During the presentation, the Karsans stressed to attendees that equity holders "would be members of a limited liability company that would own the

Hotel." The plaintiffs understood this was the investment being offered to them if they elected to participate. However, the Karsans did not tell investors that KAP had already agreed to purchase the Hotel.

Roughly a week after their presentation, the Karsans created SaiNaith, L.L.C. (SaiNaith) which the Karsans represented to plaintiffs owned the Hotel. To participate in the project, the Karsans presented investors with letters designed to reserve and document their interest. These letters stated that investors would receive a fractional interest or "share units" in SaiNaith; the cost of each share was $125,000. "Louisiana Hotel and Convention Center" appeared at the top of the letter, in large font, and directly below the "Letter of Interest" title.

All investors selected the equity option, executed their interest letters, and paid for twenty-eight SaiNaith shares, totaling $3.5 million.[1] Some plaintiffs paid at the time of signing their letters, while others paid later. After their payment, the investors believed that they owned shares in the company that owned the Hotel.

On December 7, 2006, KAP executed closing documents and purchased the Hotel. Before opening the Hotel, KAP made renovations which continued until around July 2007. The Karsans used plaintiffs' investment funds in large part to make their mortgage payments and pay for the Hotel's renovations. The Hotel opened in late 2007 and operated for roughly one year, when the Karsans held an investment meeting.

In July 2008, after a year of financial losses from the Hotel's operation, the Karsans met with investors and announced their intent to transfer the Hotel's title to SaiNaith. To make the transfer, the Karsans required that investors sign certain documents, including an act of sale, operating

---

[1] An eighth investor also purchased shares in SaiNaith but did not join this action as a plaintiff.

agreement, and an assumption of the Hotel's mortgage – which the Karsans had personally guaranteed.

This was the first time the investors learned that the company in which they held an interest, SaiNaith, did not own the Hotel. They refused to sign the documents.

## A.

Investors filed suit and asserted eleven causes of action against the Karsans, KAP, and SaiNaith. In May 2010, the district court granted a motion for partial summary judgment that found SaiNaith breached its contract with plaintiffs. As damages for this breach, it determined that the defendants were solidarily liable for $3.5 million – the amount of plaintiffs' investment.

The district court imposed judgment against SaiNaith as the party which contracted with investors and against KAP for unjust enrichment. The district court also pierced the SaiNaith company veil to impose personal liability on the Karsans.

In *Meadaa v. K.A.P. Enterprises, L.L.C.*, 756 F.3d 875 (5th Cir. 2014), we affirmed the district court's grant of partial summary judgment against SaiNaith and KAP. However, we vacated and remanded for the district court to reconsider whether the Karsans were personally liable in light of *Ogea v. Merritt,* 130 So. 3d 888 (La. 2013), which relied on a statutory exception to the L.L.C. statute to impose personal liability.[2]

## B.

On remand, the district court resolved the investors' remaining claims and reconsidered the Karsans' personal liability for SaiNaith's judgment.

---

[2] *See* La. Rev. Stat. Ann. § 12:1320(D) ("Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty, or other negligent or wrongful act by such person.").

No. 15-30413

The district court granted partial summary judgment against the Karsans personally on a number of alternate legal theories. First, it found the Karsans made an untrue statement of material fact to sell securities, violating Louisiana Revised Statutes §§ 51:712(A)(2) and 51:714, and cast the Karsans in judgment for $3.5 million – the amount of plaintiffs' investment.[3]

Second, the district court held that the Karsans were personally liable for SaiNaith's breach of contract either under a common-law veil piercing theory or under the fraud exception to Louisiana's L.L.C. statute.[4]

With respect to the district court's judgment based on the violation of Louisiana Revised Statute § 51:712(A)(2), the court concluded that the summary judgment evidence showed the Karsans made an untrue statement of material fact to sell securities to the plaintiffs. It stated:

> [t]hus, under this [securities violation] theory as well, Plaintiffs were entitled to return of the consideration paid in cash (their investments). . . [and] [t]hough we have already ruled [in its breach of contract judgment that] Plaintiffs are entitled to a return of their investment monies, we determine here that under the Louisiana Securities Law, they are entitled to a return of their investments.

Accordingly, the district court ordered damages totaling $3.5 million under Louisiana Revised Statute § 51:714, which states: "[a]ny person who violates R.S. 51:712(A) shall be liable to the person buying such security, and such buyer may sue in any court to recover the consideration paid in cash."

## II.

We review the district court's grant of summary judgment de novo,

---

[3] Otherwise, the investors' remaining causes of action were voluntarily dismissed or subject to adverse summary judgment.

[4] *See* La. Rev. Stat. Ann. § 12:1320(D).

No. 15-30413

applying the same standard as the district court.[5] Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] On summary judgment, evidence is viewed in the light most favorable to the non-moving party.[7]

### III.

We conclude that it is unnecessary for us to consider all the alternative theories of liability relied on by the district court. [8] We are satisfied that the district court did not err in imposing liability on the Karsans for violating Louisiana Revised Statute § 51:712(A)(2), which provides:

> It shall be unlawful for any person [t]o offer to sell or to sell a security by means of any oral or written untrue statement of a material fact. . .the buyer not knowing of the untruth. . .if such person in the exercise of reasonable care could not have known of the untruth or omission.[9]

To prevail under this statute, a plaintiff must show: (1) the defendant made an untrue statement of a material fact; (2) the plaintiff did not know of the untruth; and, (3) the defendant knew, or in the exercise of reasonable care could have known, of the untruth.[10]

The plaintiffs rely on the Karsans' November 22, 2006 representation that they were offering to sell equity shares in the company that would own the Hotel. When the letters of interest in SaiNaith, which contained the title "Louisiana Hotel and Convention Center," were presented by the Karsans in

---

[5] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016).

[6] Fed. R. Civ. P. 56(a).

[7] *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (internal quotations omitted).

[8] The Karsan's argument that the district court abused its discretion by striking Versha Karsans' affidavit is without merit.

[9] La. Rev. Stat. Ann. § 51: 712(A)(2).

[10] *Heck v. Triche*, 775 F.3d 265, 280 (5th Cir. 2014) (quoting *Ponthier v. Manalla*, 951 So. 2d 1242, 1255 (La. Ct. App. 1988)).

return for $125,000 per share, the plaintiffs reasonably understood they were purchasing shares in the company that owned the Hotel. This was in fact untrue – SaiNaith owned nothing. The Karsans' solely owned company, KAP, owned the Hotel.

The Karsans argue that they did not make an untrue statement of material fact. According to the Karsans, their statement was an unfulfilled future promise.

But, when we combine the Karsans' November 22 oral statement that investors would become owners of shares in the L.L.C. that owned the Hotel together with the information conveyed when the Karsans presented interest letters to the investors specifying their individual interests in SaiNaith, their meaning is clear – SaiNaith owned the Hotel. Otherwise, plaintiffs would not have paid the Karsans $3.5 million. The district court did not err in concluding that the summary judgment evidence established that the statements of the Karsans were material statements of present fact that were false.

The investors also satisfied the remaining elements of § 51:712(A)(2). They had no knowledge that the Karsans' statement was untrue.[11] And, the Karsans clearly knew that their statement was untrue, because when the Karsans represented to investors that SaiNaith owned the Hotel, KAP had already purchased the Hotel and had no plans to transfer it to SaiNaith. For these reasons, the district court did not err finding that the Karsans violated Louisiana Revised Statute § 51:712(A)(2) and are personally liable to return plaintiffs' investment.

## IV.

We agree with the district court that the summary judgment evidence

---

[11] The Karsans gave investors documents that portrayed SaiNaith as the Hotel's owner. For example, financial documents showed that SaiNaith shared in the Hotel's profits and losses. Also, the Karsans registered vehicles used by the Hotel in SaiNaith's name. Finally, SaiNaith entered into a franchise agreement with Baymont Hotels.

establishes that the Karsans sold shares in SaiNaith to plaintiffs for $3.5 million, based on false representations that SaiNaith would own the Hotel. When the plaintiffs purchased their securities, SaiNaith did not and had never owned the Hotel. Instead, it was owned by KAP, a company wholly owned by the Karsans. The plaintiffs are therefore entitled to recover their investment from the Karsans personally under Louisiana Revised Statutes §§ 51:712(A)(2) and 51:714. This resolution of the case makes it unnecessary to consider the plaintiffs' alternate theories of liability.

Therefore, the judgment of the district court is AFFIRMED.