# United States Court of Appeals for the Fifth Circuit

———————

No. 24-20147

———————

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2024

Lyle W. Cayce
Clerk

The Johns Law Firm, LLC,

*Plaintiff—Appellee*,

*versus*

Angela Pawlik,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1877

———————————————————————

Before Richman, Graves, and Ramirez, *Circuit Judges*.
Irma Carrillo Ramirez, *Circuit Judge*:[*]

Angela Pawlik appeals a contingency fee award to a law firm that she discharged prior to the resolution of her lawsuit. We AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-20147

I

A

On May 8, 2020, Pawlik hired The Johns Law Firm, LLC (TJLF) to represent her in an interpleader suit involving the proceeds of a life insurance policy. The parties entered into a contingency fee agreement that granted TJLF 40% of Pawlik's recovery if the suit was resolved more than 151 days from the agreement's execution. The agreement also provided that TJLF would be entitled to the contingency fee if Pawlik "discharge[d]" or "obtain[ed] a substitution for" it before the case was resolved, but not if it withdrew from the representation.

TJLF member Jeremiah Johns and TJLF associate Blair Brogan both worked on the case. After the relationship between Johns and TJLF began deteriorating, on November 20, 2020, Johns requested that Brogan withdraw from all of their "joint matters" and cease all communications with clients that he signed or actively represented. A TJLF partner responded that Brogan was authorized "to communicate with any [TJLF] client or opposing counsel on any [TJLF] matter" and to withdraw from any matter on which she preferred to stop working with Johns; he also asked Brogan if there were cases in which it would "make sense" that she "assume the lead counsel role."

On November 30, 2020, Brogan moved to withdraw as counsel of record in Pawlik's interpleader suit, stating that she was counsel of record alongside Johns of TJLF, she was leaving the firm, and her withdrawal would "not affect [Johns's] ongoing status as counsel of record for [Pawlik]." That same day, Johns asked Pawlik to sign a document that would "allow [him] to continue to represent her." The next day, Pawlik requested that her case file be transferred to Johns's new law firm. On December 7, 2020, Johns sent a

letter officially withdrawing from TJLF "effective immediately"; the letter was backdated to November 30, 2020.

Pawlik obtained a favorable ruling in the interpleader suit and was awarded $1,000,000, but while an appeal was pending, the parties settled the case. Pawlik received $850,000. TJLF then sought leave to intervene to assert its claim for fees, but the district court denied the request as untimely. The court directed that the $850,000 be disbursed to Pawlik and sent to Johns's new firm.

B

TJLF sued Pawlik for breach of contract and, alternatively, quantum meruit.[1] It claimed it was entitled to a 40% contingency fee because Pawlik discharged it without good cause. Pawlik argued that TJLF was not entitled to the contingency fee because it had withdrawn from her representation and because she discharged it for cause. She asserted several affirmative defenses and counterclaims. TJLF moved to dismiss her counterclaims, and the district court granted the motion.

The parties subsequently filed cross-motions for summary judgment. Pawlik supported her motion with a sworn declaration averring that she "learned" about conflicts within TJLF. The magistrate judge found that Pawlik's statements regarding the conflicts were inadmissible because they were not based on personal knowledge. Concluding that Pawlik had failed to identify a genuine fact issue regarding whether she discharged TJLF without good cause and regarding her affirmative defenses, the judge recommended

---

[1] TJLF concurrently filed lawsuits in Texas state court and in the United States District Court for the Southern District of Texas. Pawlik removed the state lawsuit to the Western District of Texas based on diversity of citizenship and filed her own lawsuit in the Southern District of Texas. The lawsuits were ultimately consolidated in the Southern District of Texas.

that summary judgment be granted in favor of TJLF. The district court adopted the recommendation in full and awarded TJLF $340,000, or 40% of Pawlik's recovery. Pawlik appeals.

## II

A district court's grant of summary judgment is reviewed *de novo*. *Martinez v. Walgreen Co.*, 935 F.3d 396, 398 (5th Cir. 2019). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

A district court's interpretation of state law is also reviewed *de novo*. *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019). "The rights and obligations of parties to a contingency fee contract are governed by state law." *Augustson v. Linea Aerea Nacionale-Chile S.A. (LAN-Chile)*, 76 F.3d 658, 662 (5th Cir. 1996) (citation omitted). Here, the parties agree that Texas law governs.[2]

## III

### A

Pawlik first argues that TJLF affirmatively withdrew from representing her when Brogan withdrew as counsel of record in her interpleader case. She also claims that TJLF forfeited the contingency under the fee agreement because it withdrew from representing her by "forcing" Johns out of the firm, "authorizing" Brogan to remove him as lead counsel,

---

[2] The contingency fee agreement included a governing law provision providing that the fee agreement would be "governed by, construed, and enforced in accordance with" Texas law.

failing to assert a fee claim for over ten months, and failing to communicate with her about her case.

In Texas, "whether and how to compensate an attorney when a contingent fee contract is prematurely terminated depends on whether the attorney was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent." *Augustson*, 76 F.3d at 662. Texas courts generally treat an attorney's withdrawal as the abandonment of a contract. *See Staples v. McKnight*, 763 S.W.2d 914, 916 (Tex. App.—Dallas 1988, writ denied) ("[A]n attorney who abandons a case without just cause before completing the task for which his client hired him breaches his contract of employment and forfeits all right to compensation."). "For the acts of a party to a contract to constitute abandonment, the acts must be positive, unequivocal, and inconsistent with the existence of the contract." *Law Offices of Windle Turley, P.C. v. French*, 140 S.W.3d 407, 411 (Tex. App.—Fort Worth 2004, no pet.). The district court held that TJLF did not abandon the representation. We agree.

Brogan only sought to remove herself—not TJLF or Johns—as counsel in the interpleader action because she was leaving the firm. Nor does Pawlik show that TJLF took actions inconsistent with the existence of a contract between Pawlik and TJLF. Pawlik has failed to identify evidence showing that TJLF unequivocally withdrew from her representation. The district court did not err.

B

Pawlik argues in the alternative that the parties mutually abandoned the representation. Because she has not identified any evidence creating a genuine issue of material fact regarding whether TJLF withdrew, she has likewise failed to show a genuine issue regarding whether the parties mutually abandoned the representation. *Compare Holt v. Manley*, 146 S.W.2d 773, 775

(Tex. App.—Amarillo 1940, no writ) (declining to find mutual abandonment where there was no evidence of "any mutual agreement between the parties to abandon the contract, nor . . . a meeting of the minds" on the issue), *with Sachs v. Goldberg*, 159 S.W. 92, 95 (Tex. App.—Galveston 1913, writ ref'd) (finding mutual abandonment of an agreement to jointly purchase a property where one party "unequivocal[ly] and absolute[ly]" repudiated the agreement and the other party subsequently attacked the repudiator and told him "he could have the lot"). The district court did not err in rejecting this argument.

## C

Pawlik next contends that the district court erred in finding that she failed to identify a genuine issue of material fact regarding whether she discharged TJLF without good cause.

In Texas, a client may discharge an attorney with or without good cause. An attorney discharged with good cause is only entitled to compensation in quantum meruit.[3] *Rocha v. Ahmad*, 676 S.W.2d 149, 156 (Tex. App.—San Antonio 1984, writ dism'd w.o.j.). A discharge without good cause entitles the attorney to "seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages the client subsequently recovers." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006) (citing *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969)). Whether a former client had good cause to discharge an attorney is a fact issue on which the client bears the burden of proof. *French*,

---

[3] Under Texas law, quantum meruit is "an equitable remedy that '"is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."'" *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (citations omitted).

140 S.W.3d at 413 (citing *Howell v. Kelly*, 534 S.W.2d 737, 739–40 (Tex. App.—Houston [1st Dist.] 1976, no writ)).

1

Pawlik first argues that a good cause inquiry is inappropriate for summary judgment because it is fact intensive and "not susceptible to a bright-line rule." But a fact-intensive test may be applied at the summary judgment stage. *Dean v. Akal Sec., Inc.*, 3 F.4th 137, 144 (5th Cir. 2021); *see also Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (explaining that fact-intensive inquiries are "better suited to summary judgment" than motions to dismiss). Here, summary judgment was proper because Pawlik failed to identify a genuine issue of material fact regarding the existence of good cause. *See* Fed. R. Civ. P. 56(a).

2

Pawlik next argues that the district court erroneously disregarded the portion of her sworn declaration detailing the basis for the discharge. "Plenary review requires that we first settle the record by resolving issues of evidence." *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992). "We review a district court's exclusion of evidence submitted in a summary judgment proceeding for abuse of discretion." *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). The "[r]esolution of preliminary factual questions concerning the admissibility of evidence are reviewed for clear error." *Id.* (quoting *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 217 (5th Cir. 2005)).

A declaration used to support a motion for summary judgment "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). Such a declaration need not affirmatively state that it is based on personal knowledge. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005).

Nevertheless, the declaration must provide sufficient information to infer personal knowledge therefrom. *Meadaa*, 756 F.3d at 881.

According to Pawlik's declaration, she was "told" or "informed" of several incidents at TJLF that she found "unsettling," but she does not say how she became "aware" of them. The declaration does not reflect that she had personal knowledge about TJLF's internal strife, so "it was incumbent upon [Pawlik] to explain how [she] acquired such knowledge." *Id.* Although summary judgment evidence "need not be presented in admissible form," it was Pawlik's burden to show the statements were "*capable* of being 'presented in a form that would be admissible in evidence.'" *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citations omitted); *see* Fed. R. Civ. P. 56(c)(2). Because she did not meet her burden, the district court did not abuse its discretion in disregarding the portions of Pawlik's declaration regarding the discord within TJLF.

3

Pawlik also argues that the district court applied an erroneous and unworkable good cause standard that is contrary to Texas law. Because the Supreme Court of Texas has not articulated what constitutes good cause to discharge an attorney, the district court ventured an *Erie* guess. It found that, under Texas law, "good cause for discharging an attorney requires evidence that the attorney either failed to or cannot adequately represent the client, or otherwise failed to fulfill the attorney's legal duties to the client."

We decline to address the district court's standard. Under the *Erie* doctrine, we need only decide whether the Supreme Court of Texas would find good cause under these facts. *Ironshore*, 912 F.3d at 764; *see also Mayo v. Hyatt Corp.*, 898 F.2d 47, 49 (5th Cir. 1990) ("[I]t is not for us to adopt innovative theories of recovery under state law."). Texas appellate court decisions are the strongest indicators of what it would decide. *Ironshore*, 912

F.3d at 764 ("[W]e typically treat state intermediate courts' decisions as the strongest indicator of what a state supreme court would do, absent a compelling reason to believe that the state supreme court would reject the lower courts' reasoning.").

Texas appellate courts have generally found good cause to discharge an attorney where the attorney behaved unethically or failed to fulfill legal duties to the client. *See Rocha*, 676 S.W.2d at 155 (upholding a finding of just cause where the attorney was "impatient and rude," proposed a settlement without consulting the client, failed to request the names of potential witnesses or contact expert witnesses, postponed trial without the client's knowledge or consent, regularly cancelled client appointments, and refused to try the case); *Kelly v. Murphy*, 630 S.W.2d 759, 761 (Tex. App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) (finding good cause where an attorney non-suited a case and re-filed it in a different court without the client's consent).

Conversely, Texas appellate courts have declined to find good cause to discharge an attorney where a client refused to pay the agreed-upon fee, or where the law firm presented evidence that it could adequately represent the client. *See Crye v. O'Neal & Allday*, 135 S.W. 253, 254 (Tex. App. 1911, no writ) (finding dismissal of attorneys "wrongful" where the client demanded they represent him for $250 after agreeing to pay $500 for their services); *White v. Burch*, 19 S.W.2d 404, 407–08 (Tex. App.—Fort Worth 1929, writ ref'd) (upholding a jury verdict in the attorney's favor after the client failed to prove that the attorney defrauded her); *French*, 140 S.W.3d at 409–13 (holding that former clients had not shown good cause to terminate a law firm where it presented evidence that it was "ready, willing, and able to handle the case without delay").

No. 24-20147

Based on Texas jurisprudence, we conclude that the Supreme Court of Texas would not find good cause under these facts. The district court did not err in granting summary judgment in favor of TJLF.[4]

D

Finally, Pawlik challenges the district court's finding that she failed to identify genuine fact issues concerning her affirmative defenses of waiver, equitable estoppel, laches, and prior material breach. We find no error.

1

"Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver has three elements: "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Id.* The element of intent "must be unequivocally manifested." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015).

Citing *French* for the proposition that an attorney seeking to enforce a fee agreement must inform the client of his desire to continue the representation, Pawlik contends that TJLF impliedly waived its right to recover a contingency because its members failed to communicate with her about her case and withdrew from the representation. But that is not one of the holdings in *French. See generally French*, 140 S.W.3d at 411–13. More importantly, Pawlik discharged the firm, it did not withdraw. TJLF's failure

---

[4] Pawlik argues in the alternative that we should certify the good cause question to the Supreme Court of Texas under Rule 58 of the Texas Rules of Appellate Procedure. Because we can resolve this issue based on existing Texas case law, we decline to certify the question.

10

to contact her after the discharge is not unequivocal evidence of its intent to relinquish its right to the contingency fee.

Pawlik also argues that TJLF's failure to "promptly" claim its fee constitutes waiver. TJLF intervened after the intervenor suit was settled. The point at which Pawlik obtained a recovery is when TJLF's "right" to claim its contingency fee materialized. The district court did not err.

2

"[E]quitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 515–16 (Tex. 1998).

According to Pawlik, equitable estoppel bars TJLF's fee claim because the firm knew that she relied on its withdrawal and its failure to communicate with her after she "transferred" her matter to Johns's firm. This argument fails for the same reason as her waiver argument—she discharged TJLF. The parties agreed that TJLF was entitled to the full contingency fee if she discharged the firm. We find no error.

3

Laches is an equitable defense and therefore inapplicable to a breach of contract claim, a legal right. *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied); *see also Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) ("Since a bill of review is equitable in nature, laches may be raised as a defense to its prosecution."). The district court correctly held that Pawlik's reliance on laches is barred.

No. 24-20147

4

The material breach of a contract by one party excuses the other from any further performance. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). To show TJLF breached its contractual obligations, Pawlik reiterates the same allegations as above, that it withdrew from the representation, authorized Brogan to remove Johns as lead counsel, and failed to communicate its desire to represent her.

As the district court correctly concluded, these allegations do not evince a material breach by TJLF. And the evidence shows that Brogan's work in the interpleader suit led to a favorable ruling for Pawlik, at least in part. Pawlik has failed to carry her summary judgment burden with respect to a material breach. The district court did not err.

\*      \*      \*

The judgment of the district court is AFFIRMED.